IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DORIS M. TAYLOR																																					PLAINTIFF

v.																																					CIVIL ACTION NO. 4:16CV211

COMMISSIONER OF THE
SOCIAL SECURITY ADMINSTRATION																												DEFENDANT

MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying the application of Doris M. Taylor for Disability Insurance Benefits under the Social Security Act. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. After considering the issues raised, the court finds as follows:

In this case the plaintiff argues that the ALJ erred in giving greater weight to the opinion of a non-examining physician over the opinion of a consultative examiner and that the ALJ did not fully and fairly evaluate all of the evidence in the record, but rather cherry-picked the evidence to justify denying benefits.

STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla.

1

It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. The court must however, in spite of its limited role, scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992). If the Commissioner's decision is supported by the evidence, then it is a conclusive and must be upheld. *Perales*, 402 U.S. at 390.

## BACKGROUND

Doris Taylor was fifty-one years old as of the date of her alleged onset of disability on March 12, 2013. She worked for many years as a paramedic which is skilled work performed at the very heavy exertional level. She also worked as a pharmacy assistant, skilled work performed at a light level of exertion. At the hearing, the plaintiff requested consideration of the favorable determination. On July 12, 2015, the ALJ issued an unfavorable decision. He found

that Taylor had severe impairments of a spine disorder, spondylosis at C5-6 and 6-7 with nerve root compression, cervical radiculopathy, osteoarthritis, headaches, depression, dysthymic disorder, generalized anxiety disorder and personality disorder. He did not mention either the favorable disability determination of the Mississippi's public employees' system, nor the physician's statements that had been submitted in connection with that claim. The ALJ found that Taylor could not return to her past employment, but in accordance with the testimony of expert vocational witness that there were other jobs she could perform and that she was not disabled. That decision was affirmed by the Appeals Council and this appeal timely sought.

## THE ALJ'S DECISION

In his unfavorable decision, the ALJ discussed the treatment records from the plaintiff's health-care providers in considerable detail. He noted a successful remote C4-5 fusion by Dr. Thomas L. Windham. Medical records from September 2011, prior to the onset of disability, reflect complaints of neck pain with radiation into the upper extremities. Imaging showed mild lumbar disc bulges at two levels and cervical spondylosis with foraminal narrowing which the doctor concluded was nonsurgical. Dr. Windham found moderate loss of motion in the neck, a full range of motion in the upper extremities, with normal motor and sensory function but diminished reflexes in the upper extremities. Dr. Windham recommended cervical blocks. Testing for rheumatoid arthritis in November of 2012 was negative. A December 2012 MRI of the cervical spine showed spondylosis at level CV5-6 and C-6-7 with neuroforaminal narrowing. An MRI of the lumbar spine showed a left bulge at L2-3 and L3-4 with mild spinal stenosis and neurofaminal narrowing.

The ALJ also discussed the records of the plaintiff's rheumatologist, Dr. Kirk Eddleman. Dr. Eddleman noted her complaints of general joint pain and stiffness. Again, Taylor tested

negative for rheumatoid arthritis. The doctor's impression was polyarthritis, osteoarthritis and fatigue. The ALJ found that Dr. Eddleman concluded she had no erosive osteoarthritis. This is a misstatement as the doctor specifically found Taylor suffered from erosive osteoarthritis. She was treated for her arthritis with anti-inflammatory medications, pain medications, therapy and epidural blocks.

The ALJ also discussed the records from Dr. Kevin T. Foley. Based on radiographic studies, Dr. Foley recommended fusion surgery for Taylor at level C5-6 and C6-7, but the plaintiff did not have the recommended surgery. In April 2013, laboratory testing for rheumatoid arthritis was again negative. Images of her right and left hip showed no abnormalities. Images of the cervical spine showed mild osteophytes at level C5-6 and C6 -7 with mild retrolisthesis. Images of the lumbar spine showed mild degenerative changes.

In September 2013, the record showed that the plaintiff complained of headaches but examination yielded no abnormal neurological findings. The doctor recommended a brisk exercise program.

The ALJ's opinion also noted the plaintiff's mental impairments. She was seen by Dr. Jack C. Morgan from 2011 through May 2015. This doctor treated her for anxiety and depressive symptoms with prescribed medications. He made a provisional diagnosis of attention deficit hyperactivity disorder and gave the plaintiff GAF scores ranging between 65 and 78. Her complaints were primarily related to mental issues and stress. She did not report side effects from the medications. The ALJ also the discussed how these records demonstrated at times the plaintiff appeared to be on an "even keel" and at other times demonstrated anger and frustration based on what she felt was her declining physical condition.

The ALJ discussed also discussed the consultative examination performed by Dr. Michael Whelan, PhD, on the claimant in August 2013. The claimant complained of trust issues because of marital experiences, reported on her activities of daily living which included hobbies, doing housework, driving, taking care of pets, and visiting friends. Whelan found she should be able to handle her own finances. He also noted that she exhibited good concentration during his examination. His impression was anxiety and depression with moderate to severe dysthymic disorder and generalized anxiety disorder. Dr. Whelan believed that her symptoms were exacerbated by her alleged pain, and opined that she would probably have difficulty sustaining concentration based on pain and her physical limitations.

The ALJ found that Taylor had the residual functional capacity to lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. She could stand or walk for six hours in an eight-hour work day and could sit for six of eight hours. She could frequently reach, but overhead reaching was precluded. She could perform frequent handling. The ALJ found she could only occasionally climb ramps and stairs, and never ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch or crawl. She was limited to occasional exposure to unprotected heights, moving mechanical parts and atmospheric conditions.

The ALJ found that because of her mental impairments she was limited to performing simple routine and repetitive tasks. She could occasionally interact with the public. He also found that the claimant would tolerate few, if any, changes in the workplace.

The ALJ then explained that much of the plaintiff's testimony regarding her pain, which she described as eight or nine on a scale of one to ten, was incredible and inconsistent. He discounted her testimony about her limitations secondary to her symptoms, again calling the testimony incredible on several occasions. He noted that her testimony regarding her daily

5

activities was inconsistent with her reports elsewhere in the record such as the reports she made to Dr. Whelan. He called her testimony concerning frequent panic attacks incredible and uncorroborated by her treatment records. He discounted her testimony about not being able to remember messages an hour later, because nothing in her mental health records indicated any significant deficits in memory or concentration. He concluded the reports of daily activities were inconsistent with any severe debilitating impairment and her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.

The ALJ found there was minimal evidence on which to find that her spine disorders and spondylosis at C5-C6 and C6-7, her arthritic symptoms and mental disorders were disabling. Among other things the ALJ noted that while the record showed complaints of neck and back pain and treatment for these problems from 2011 through 2013, there were not records for treatment of back or neck problems from 2014 and 2015. He again reviewed the pertinent office records in finding that her physical and mental impairments would have some minimal impact on her but not greater than set out in the RFC.

The ALJ did provide less weight to the opinion of Dr. Whelan regarding his opinion that the plaintiff would have difficulty sustaining her concentration and attention due to her pain and physical limitations, noting that this conclusion was inconsistent with Whelan's finding that her concentration was good throughout his examination and to her treating mental health records. He gave great weight to the treating mental health records which showed overall negative mental status findings and adequate coping skills.

Based on the testimony of the vocational expert, the ALJ found that the plaintiff could not return to her past work as an EMT. He found that but for the plaintiff's non-exertional limitations, her capacity to perform light work would mandate a finding that she was not disabled

under Medical-Vocational Rule 202.14. The vocational expert testified that the plaintiff, with the additional non-exertional limitations would be able to work as a mail sorter, photographic machine operator or a shirt folder. There were approximately 2150 such jobs in Mississippi, and thus the ALJ found her not disabled.

The ALJ did not discuss the disability finding made by the Mississippi employees retirement system or the brief physicians statements that had been presented to the ALJ at the hearing that had been used by this state agency in its award of disability benefits.

### 1. Defining the issues

The plaintiff's brief separated her complaints into two arguments: 1) That the ALJ erred when he gave greater weight to the opinions of the state disability determination doctors than to the "opinion of an individual who actually examined the claimant"; and 2) that the ALJ cherry picked the evidence to justify denying benefits. It appears to the court that the plaintiff has actually made two separate arguments within the first argument: a) that the ALJ erred when he gave greater weight to the opinion of the state disability determination doctor on the plaintiff's mental impairments and less weight to the opinion of Dr. Michael Whelan, the consulting examiner and b) that the ALJ erred when he failed to consider the disability determination of the Mississippi PERS agency **and** the PERS supporting evidence -- four statements from Taylor's physicians that had been submitted to PERS. The ALJ did not discuss the PERS decision or these doctor's statements, nor did he say what weight he would give to these few pages of documents. The court, therefore, will treat the second part of the first argument as a separate argument that the failure to address the PERS decision and the supporting documents is reversible error.

## A. Weighing of Mental Health Opinions

A review of the ALJ's opinion shows that he gave "great weight" to the state agency doctors regarding both Taylor's physical capacity and her mental health impairments. It is also true that while he gave "great weight" to Dr. Whelan's specific findings on his findings on examination, he afforded less weight to his conclusions regarding the impact of her physical problems on her ability to work. The court finds no error in the ALJ's determination because he both explained why he discounted part of Whelan's opinions and because his determination of the plaintiff's mental impairments reflects a blending of the opinions of the disability determination doctors and the consulting physician's opinion.

Dr. Whelan's report provided extensive findings regarding the plaintiff's mental problems, conditions and general health status. She told Whelan her activity level varied with her pain. Whelan described her as a very angry woman who had been receiving anger management training, though she only saw her psychiatrist once every three months. She reported having anxiety attacks and took Valium as needed. Whelan thought she was angry, depressed, anxious and in need of psychological counseling. Whelan thought she was of average intelligence and that her concentration was good during the examination. He stated: "She would have difficulty sustaining her attention and concentration in a work setting due to pain." Taylor suffered from chronic depression but was never suicidal nor did she suffer from any psychotic symptoms. Whelan thought she had moderately severe dysthymic disorder and generalized anxiety disorder with some features of panic attacks treated successfully with diazepam. He found that her Adult Attention Deficit Disorder, which would impact her concentration, was effectively treated with Adderall and that her concentration is "very good during exam."

Whelan concluded that "She would probably have difficulty sustaining her concentration and attention if she was distracted by her physical limitations and pain."

The ALJ explained that he was discounting Whelan's opinion concerning Taylor's ability to concentrate at work because it was inconsistent with his finding that her concentration was very good during the examination. Another explanation for limiting the weight given to Whelan's opinion is implicit in that the ALJ repeatedly found Taylor's reports of her pain and limitation "incredible." Dr. Whelan, a psychologist, accepted Taylor's reports that her pain was very severe. Whelan said she would have difficulty maintaining concentration at work *if* she was distracted by pain. Whelan's opinion that Taylor would have trouble maintaining concentration was conditioned upon the plaintiff suffering severe pain that would distract her. When the ALJ found that Taylor did not suffer from such severe pain, Whelan's opinion was necessarily undermined.

Additionally, the ALJ's decision shows that he did consider Whelan's report when he assessed Taylor's mental condition. The disability determination doctors found Taylor suffered moderate difficulty in social functioning but only mild difficulty in concentration, persistence and pace. The ALJ determined that the claimant had moderate limitations in concentration persistence and pace, a conclusion consistent with Whelan's opinion.

Accordingly, the court finds there was no error in the ALJ's handling of the opinion evidence on the plaintiff's mental condition.

## THE PERS DECISION AND THE DOCTORS' STATEMENTS

Next, the plaintiff argues the ALJ erred because he never mentioned that the Mississippi Public Employees Retirement System (PERS) found the plaintiff was disabled, nor did he address the supporting physicians' statements. The plaintiff asserts this is a violation of SSR 06-

03p, 2006 WL 2329939 (Aug. 9, 2006), which notes that while decisions on disability by other governmental agencies are not binding on the Social Security Administration, those decisions must be considered by the ALJs. The Commissioner confesses that this omission is error but argues that the error is harmless.

The notification of the favorable PERS disability determination and the doctors' statements were appended to a letter from the claimant's attorney requesting a favorable determination or at least expedited consideration based on the PERS decision. This letter and the physicians' statements are listed as an "On the Record Request" and included, according to the Exhibit List at the end of the hearing transcript, with the jurisdictional documents and notices but not among the medical exhibits. Given the otherwise thorough, detailed and lengthy opinion, it seems likely that the ALJ, while clearly aware of the PERS decision, may not have been aware of the physicians' statements. The court must determine whether the omission to address the PERS decision and the statements was reversible error.

First, it is important to note that the decisions of another governmental agency are not binding on the Social Security Administration. The plaintiff has not shown the standards applicable to the PERS determination. Did PERS simply find that Taylor was disabled because she could not continue her past job? The Commissioner concurred that she cannot do that job anymore, but that finding does not necessarily mean the plaintiff is disabled under SSA regulations. Furthermore, whatever guidance, insight or persuasiveness a reasoned decision awarding benefits might provide to a Social Security ALJ, assuming an identical standard applied to the PERS determination, there is no such decision in this record. The ALJ was provided with only that disability benefits had been awarded. Consequently, the court finds that the failure to mention the PERS disability determination was not prejudicial error.

The statements by Taylor's physicians are potentially more problematic. The ALJ reviewed the records of Taylor's treating physicians and in his opinion gave great weight to their findings, examinations, opinions, and recommendations as set forth in those treatment records. He discussed these records in significant detail. The question becomes whether consideration of this handful of other documents, not mentioned in the opinion, would likely alter the outcome or cast doubt on whether there was substantial evidence to support the decision. *Audler v. Astrue*, 501 3d 446, 448 (5th Cir. 2007); *Morris v Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

The first statement is from Dr. John Seibel with Sunset Cardiovascular and appears to be immaterial to the decision. His medical records were not included in the SSA record. The report references attached medical records from the latest visit more than a year before the statement. Seibel indicated that Taylor had no restrictions.

The second statement comes from Dr. Barr. Dr. Barr lists the plaintiff's primary complaint as left shoulder pain. He says she was to have nerve blocks to her cervical spine, suffers neck pain and has numbness in her fingers. In his statement to PERS, Barr indicated that she would have limited use of her left hand and limited lifting. Barr only saw the plaintiff for a limited period of time, beginning with a visit in December 2012, and a follow up visit in February 2013, for complaints of neck pain. There is a third visit in April 2013. Given that Taylor is right handed, the ALJ's restrictions on lifting, and reaching overhead are consistent with Barr's PERS statement.

The third statement from Dr. Kevin Foley is consistent with his office records. He reports Taylor's cervical spondylosis, cervical radiculopathy and that he recommended a two-level cervical discectomy and fusion surgery for relief of her symptoms. Because she did not

11

had the surgery performed, Foley was unable to state whether she would suffer any permanent impairments. Foley's PERS statement adds nothing to the records the ALJ already considered.

The final statement comes from Dr. Joseph Messina, the plaintiff's internal medicine doctor and primary care physician. Doctor Messina's PERS statement notes Taylor has osteoarthritis and degenerative cervical disc disease, both of which he characterizes as severe. He says she has a poor prognosis for improvement and cannot do significant or repetitive lifting. He notes impaired grip strength in her left, non-dominant hand, and some bicep weakness. He alone lists a specific limitation, stating that "she has been advised to avoid any significant lifting" which he said was less than 2 pounds, or performing any repetitive stooping or bending. The RFC already includes the limitation on stooping and bending, but does not incorporate the extreme lifting restriction.

The court notes that from the phrasing of the restriction, it is unclear whether Messina meant to issue an opinion regarding lifting restriction, or he was simply stating a restriction that he thought some other doctor had imposed. If the latter, the information he was providing was erroneous because neither Dr. Foley's PERS statement, nor his records, nor the treatment records of Drs. Barr and Eddleman contain such a limitation.

While Dr. Messina, as a primary care provider, was no doubt very familiar with the course of treatment provided to Taylor, he does not appear to have been directly involved in treating her neck, back or shoulder problems, which would be the genesis of any lifting restriction. He is noted throughout the records of the Drs. Morgan, Foley and Eddelman as the referral source. While Dr. Messina had a long-standing treating relationship with Taylor, there are only two visits in the records after the date of onset. In a March 2013 examination, he

followed up with her for hypertension and left arm weakness. She was also seen by Messina in September of 2013 for follow-up on her hypertension and for bruising on her arm.

It, therefore, appears that in this small group of PERS documents, only Messina offers a restriction not included in the RFC. When the court cannot be certain that the ALJ considered a piece of evidence in the record, this court sometimes prefers to err on the side of remanding the case, if the added information *might* make a difference. But in this case because of the ALJ's strongly worded rejection of the plaintiff's claims of pain and limitations, it is difficult to find any reasonable possibility that the ALJ's decision would be altered by remand demanding explicit consideration of Messina's opinion. The lifting limitation in Messina's PERS statement involves treatment by another physician; is not consistent with the treating specialist's PERS statement; and is not consistent with Messina's treatment records.

Accordingly, the court finds that, though the failure to discuss the doctor's PERS statements is clearly error, the plaintiff has not shown that the error was prejudicial.

### 3. Failure to fully and fairly evaluate all evidence

The plaintiff next argues that the ALJ did not fairly and fully evaluate all evidence in the case, but rather cherry-picked the evidence to justify the denial of benefits. The plaintiff argues that the determination of the RFC is particularly crucial in this case because if Taylor's RFC is lowered from a limited range of light work to a sedentary exertion level, with her age and education, she would be found disabled pursuant to the Medical Vocational guidelines.

The court must be cognizant both of the limits on its scope of review and its obligation to prevent an arbitrary selection of only evidence unfavorable to the plaintiff. The law governing these two different tasks appears to be sometimes contradictory. On appeal, the court must affirm decisions supported by substantial evidence, which is more than a scintilla of evidence.

*Perales*, 402 U.S. at 401. The courts must affirm even if evidence preponderates against the Commisioner's decision. *Bowling,* 36 F.3d at 434. It may find "no substantial evidence" only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Harrell*, 862 F.2d 475. The caselaw cautions that appellate courts shall not to reweigh the evidence, nor to substitute its judgment for that of the agency. *Hollis*, 837 F.2d at 1383. Nevertheless, the appellate courts are directed to scrutinize the entire record to assure that an ALJ has considered all of the evidence in the record, rather than simply picking and choosing only the evidence that supports his position. *Loza v. Apfel*, 219 F.2d 378 (5th Cir. 2000).

In the present case, the plaintiff claims the ALJ inappropriately selected only that evidence that supported his decision and ignored other evidence and even misinterpreted the records. The ALJ did make a factual error in his discussion of Dr. Eddleman's records when he found the doctor said Taylor did not have erosive arthritis. Eddleman, to the contrary, thought Taylor suffered from erosive arthritis and discussed treatment options with her. But the ALJ discussed these records in some detail. Eddleman's testing showed she did not have rheumatoid arthritis. The ALJ noted that Eddelman found Taylor has polyarthritis and generalized joint pain and stiffness. He noted Eddleman's finding that Taylor had a non-tender spine and back on examination. He noted Eddleman's findings that she had no edema, deformation of her joints nor active synovitis of her joints at his examination. Finally, the ALJ found that Taylor's osteoarthritis was a severe impairment.

The plaintiff also takes issue with the ALJ's discussion of an MRI performed in December 2012. The ALJ mentions this MRI which he described as showing "spondylosis at level C5-6 and C6-7 with neuroforaminal narrowing." The MRI noted a fusion of C4-5, later identified by Dr. Foley as a Klippel-Feil anomaly. The MRI report mentions a spondylitic bar

14

seen posteriorly at C5-6 with bilateral recess and neuroforaminal narrowing, and a spondylitic bar at C6-7 centrally abutting against the spinal cord and extending into the left lateral recess and foramina. The plaintiff also notes that Dr. Foley's review of the MRI finds she had degeneration and cervical spondylosis at C5-6 and C6-7 and severe foraminal stenosis bilaterally. The plaintiff argues that this evidence is inconsistent with the ALJ's finding that the plaintiff had overall "mild" objective findings.

The court is unconvinced that any difference between how the ALJ described this MRI and the precise language of the report and Dr. Foley's description represents parsing the records or ignoring findings favorable the plaintiff. First, there are indeed other "mild" radiographic findings in the record. The plaintiff also complained of lumbar pain radiating into the hips and her leg, but another lumbar MRI showed only "mild" spinal stenosis with neuroforaminal narrowing, and images of the hip showed no abnormality.

It also does not appear that the ALJ disregarded or questioned Dr. Foley's findings regarding the spondylosis at C5-6 and C6-7. The ALJ expressly acknowledged that Foley found many of Taylor's complaints were consistent with the radiographic findings at C5-6 and C 6-7 and acknowledged that Dr. Foley had recommended surgery to alleviate her symptoms. The ALJ questioned the severity of the plaintiff's resulting symptoms, not based on his reading of the radiographic findings, but, among other things, because the plaintiff elected to forego the recommended surgery; had a one-year gap where she received no treatment; and reported substantial activities of daily living that were inconsistent with her testimony at the hearing.

After a complete review of the record, the court finds that the ALJ considered the evidence of record and fairly evaluated the same.

CONCLUSION

15

After considering the matter, the court is satisfied that substantial evidence supports the decision and that any errors committed were harmless. Accordingly, the Commissioner's decision is affirmed. A judgment in accordance with the opinion shall follow.

THIS the 3rd day of October, 2017.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE